C. W. BREWSTER, W. S. BURNS, A. T. MELVIN, L. LANDECKER, R. B. McBRIDE, J. G. McCALLUM, W. H. COOPER, O. H. BURNHAM, AND F. A. BEE v. H. H. HARTLEY, GEO. W. SWAN, JOHN BLAIR, JAMES BLAIR, TRUMAN WILCOX, F. A. BISHOP, G. G. CLARK, WM. C. WILKINSON, AND S. D. BREWSTER.

RAILROAD CORPORATIONS.— There is a typographical error in the Statutes of 1851, page 443, Sec. 31. As printed said section repeals the Act of April 22d, 1850, concerning railroad corporations. The enrolled Act only repeals the third Chapter of said Act of April 22d, 1850.

JUDGMENTS BY JUDGES AT CHAMBERS.—The Constitution does not prohibit the Legislature from conferring upon District Judges the power to hear and determine actions and proceedings at Chambers.

APPEAL FROM JUDGMENT AT CHAMBERS.—An appeal may be taken from a judgment rendered by a District Judge at Chambers, in an action of mandamus, certiorari, or quo warranto, or in a special proceeding to try the validity of a corporation election.

STIPULATION OF FACTS, AND JUDGMENT ON.—If the attorneys stipulate as to what are the facts in the case, and that the stipulation shall form a part of the judgment roll, the facts therein admitted stand in place of a finding of facts by the Court, and constitute a part of the judgment roll, and no specification of the

errors relied on on appeal need be made in the transcript, nor is a statement necessary.

EXERCISE OF POWER BY CORPORATION.—Where the statute makes provision concerning the exercise of a power by a corporation, the corporation cannot by its by-laws, resolutions or contracts change the mode of the exercise of that power, or the persons by whom to be exercised.

DIRECTORS OF CORPORATION—ELECTION OF.—The statute gives the stockholders of a railroad corporation the power to elect its Directors. The corporation cannot take this power away from the stockholders.

WHAT CONSTITUTES A PLEDGE AND OWNERSHIP OF PLEDGE.—If a corporation is indebted to A. for money advanced, and as security for the same issues to B., as trustee for A., shares of the capital stock of the corporation, to be retransferred to the corporation upon payment of the indebtedness, the transaction constitutes a pledge of the stock.

IDEM.—The fact that in such case B. is the trustee of A., and that the stock is issued to B., does not prevent the transaction from being a pledge of the stock as between the creditor and the corporation.

IDEM.—The general property of the stock in such case is in the pledgor—the corporation.

NOTICE TO OFFICERS OF CORPORATION.—Where the Certificate Book of a corporation shows that stock is held by a person as trustee, the officers of the corporation are charged with notice that he does not hold the stock in his own right. Officers of a corporation are charged with notice of a contract to which the corporation is a party.

VOTING CORPORATION STOCK.—Stock belonging to a corporation cannot be voted upon by any person, even if held in the name of a person as trustee.

SUBMISSION OF CASE ON AGREED FACTS.—If a case is submitted upon stipulated facts, without reserving the question of the competency, relevancy, or admissibility of evidence to prove such facts, the question cannot be raised that such facts are not properly before the Court.

CERTIFICATES OF CORPORATE STOCK.—Railroad corporations cannot issue certificates of stock until they are paid for in full.

QUESTION NOT DECIDED.—The question whether corporations can issue certificates of stock except to subscribers therefor who have paid up for their subscriptions, is not decided.

STOCK OF CORPORATION ILLEGALLY ISSUED.—Certificates of stock of a corporation issued to a creditor of the corporation, or to a trustee for him, as a pledge to secure his debt, are illegally issued, and cannot be voted by any person.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

In 1862 a corporation was formed, called the Placerville and Sacramento Valley Railroad Company. On the 21st day of August, 1865, the corporation was indebted to Wells, Fargo & Co. in the sum of two hundred and sixty-eight

thousand dollars for money advanced. On said day the Board of Directors of said corporation passed the following resolution:

"F. A. Bishop moved that ten thousand shares of the capital stock of the Placerville and Sacramento Valley Railroad Company be issued to Louis McLane, as trustee for Wells, Fargo & Co., as security for moneys advanced by Wells, Fargo & Co. to said railroad company, with authority to vote the same at all meetings of the stockholders; *provided*, the said Louis McLane enter into a written agreement that the said stock shall be transferred to the company on payment of said indebtedness to Wells, Fargo & Co., and in proportional amount as said payments are made."

On the same day (August 21st, 1865) the ten thousand shares of stock were issued to Louis McLane, and a certificate of stock delivered to him, and receipted for in the following words upon the books of the company:

"Received the above certificate subject to the articles of incorporation and by-laws of the company.
                                "LOUIS McLANE, Trustee."
"Per THEO. F. TRACY."

On the 3d day of October, 1865, said Louis McLane entered into the following writing or agreement, which was placed on file in the office of said corporation, namely:

"The advance made by Wells, Fargo & Co., occasioning the indebtedness mentioned in the motion or resolution, of which the following is a copy, to wit: 'F. A. Bishop moved that ten thousand shares of the capital stock of the Placerville and Sacramento Valley Railroad Company be issued to Louis McLane, as trustee for Wells, Fargo & Co., as security for moneys advanced by Wells, Fargo & Co. to said railroad company, with authority to vote the same at all meetings of

the stockholders; *provided,* the said Louis McLane enter into a written agreement that the said stock shall be retransferred to the company upon payment of said indebtedness to Wells, Fargo & Co., and in proportional amounts as said payments are made,—carried unanimously,'—having been made in consideration of the transfer of stock therein mentioned, and of the right of the transferee or his properly authorized agent or proxy to vote the stock so transferred at all meetings of said company and the stockholders thereof, I, Louis McLane, of the City and County of San Francisco, named in the said motion or resolution, in consideration of the premises and of the transfer of said stock to me, do hereby covenant and agree to and with the Placerville and Sacramento Valley Railroad Company to retransfer to said company said stock upon the payment of said indebtedness to Wells, Fargo & Co., and in proportional amounts as said payments are made. I to vote said stock as aforesaid by myself in person, or by any duly authorized agent or proxy. And for the consideration and upon the terms aforesaid, I hereby accept said trust.

"In witness whereof, I have hereunto set my hand and seal, this third day of October, A. D. 1865, at the City and County of San Francisco, State of California.

"LOUIS McLANE.    [SEAL.]

"Witness: A. B. FORBES."

The Certificate Book of stockholders contains an entry showing said ten thousand shares of stock to be and stand on the said book in the name of Louis McLane, thus: "Louis McLane, trustee, ten thousand shares."

An election was held February 4th, 1868, at Placerville, in said county, being the time and place appointed by the by-laws for the election of Directors, at which, of the whole number of votes cast, each of the defendants, namely: H. H. Hartley, Geo. W. Swan, John Blair, James Blair, Truman Wilcox, F. A. Bishop, G. G. Clark, Wm. C. Wilkinson, and S. D. Brewster received ten thousand five hundred and twelve,

ten thousand of which were cast by Louis McLane, by his proxy, Charles E. McLane. And three thousand and ninety-eight votes were cast for each of the plaintiffs, namely: C. W. Brewster, W. S. Burns, F. A. Bee, A. T. Melvin, L. Landecker, R. B. McBride, J. G. McCallum, W. H. Cooper, and O. H. Burnham.

All of the votes cast were admitted to be legal and correct votes, except the ten thousand votes so cast by said Louis McLane, which are claimed to be illegal by plaintiffs, but which is denied by defendants.

At the time and before said ten thousand votes were cast, the right to cast them was denied and objected to, and a protest was made against their being cast by all the stockholders who voted for the plaintiffs.

The Chairman of said meeting having overruled said objection, an appeal was thereupon taken to said stockholders' meeting, who voted three thousand and ninety-eight shares against sustaining the same, and ten thousand five hundred and twelve shares to sustain it—ten thousand shares thereof being cast in manner aforesaid, against the objection and protest of all those voting against sustaining said decision—and the same was thereupon declared to be sustained, and said ten thousand shares were voted accordingly.

Said defendants were thereupon declared to be elected, against which declaration the plaintiffs then and there protested. Defendants are now, and have since said election, been acting as such Directors, and in the possession of said offices, together with the books and property appertaining thereto. Plaintiffs, before the commencement of this action and proceeding, and after said election, demanded the possession of said offices, books, and other property appertaining to said offices, which defendants refused to deliver. The whole number of shares of the capital stock was fifteen thousand, at one hundred dollars each; of which fourteen thousand six hundred and seventy-four shares have been issued, if said ten thousand shares are counted, or four thou-

sand six hundred and seventy-four, if said disputed shares are not counted.

This action was commenced under the section of the Act concerning corporations recited in the separate opinion of Mr. Chief Justice SAWYER, and was submitted upon a stipulation of the attorneys that the foregoing were the facts. The case was submitted in the Supreme Court upon the following stipulation:

"It is hereby stipulated that the foregoing complaint, stipulations, and judgment contain a correct statement on appeal, and that this is a true transcript of the same, being the judgment roll in said cause."

The transcript on appeal contained the complaint, and a stipulation in place of an answer that the allegations of the complaint should be deemed denied without an answer, the agreed facts, and the above stipulation as to the transcript. There was no assignment of errors, or statement of the grounds upon which a reversal of the judgment was sought, in the transcript.

The case was submitted to the Judge below, and by him decided at Chambers. The defendants were by him adjudged to have been properly elected Directors. From his decision the plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*J. G. McCallum,* for Appellants.

The ten thousand shares of stock were illegally voted. Neither Wells, Fargo & Co. nor Louis McLane, in person or by proxy, could legally vote the disputed stock. Neither of them owned it; the stock was hypothecated as "security for a debt," to be retransferred when the debt should be paid, and in proportionate amounts as it should be paid. It was neither a sale of the stock nor a mortgage of it, but simply a pledge.

The point we make now is not as to the relative rights of

Wells, Fargo & Co. and Louis McLane, but assuming for the argument that the trustee had all the rights of the *cestui que trust*, he could not have more. Louis McLane was not the stockholder of this stock, and no one has the right to vote at an election of Directors for a railroad corporation except the owner—the "stockholder in person or by written proxy." (Railroad Corp. Act, Sec. 5; General Laws, p. 126.)

Nor can the pledgee vote the pledged stock. No person holding stock "pledged shall be liable as a stockholder, but the person pledging the stock shall be considered as holding the same, and shall be liable as a stockholder accordingly." (Railroad Corp. Act, Sec. 12.) To be a stockholder one must be liable as such. (State Const., Art. IV, Sec. 32; Act concerning Corporations, Sec. 32; General Laws, p. 118.) Louis McLane, not being liable as a stockholder, had not the right to vote, which belongs only to the stockholder; therefore, he had no right to vote this stock in any manner, either in person or by proxy. Neither had the beneficiary, Wells, Fargo & Co., for the same reason. The Directors had no power to issue the certificate of this stock. "Certificates of stock shall be issued for all stock fully paid up." (Railroad Corp. Act, Sec. 14; General Laws, p. 128.) For this stock there was neither subscription nor payment, nor promise of payment; there was no sale of it, either absolute or conditional. There is no way of becoming a stockholder, except through "subscription and payment." Every section of the Act cited in relation to obtaining stock recognizes this principle.

The disputed stock belonged to the corporation; therefore, it could not be legally voted by any one. "A company cannot hold its own stock, so as to give its Directors or Trustees a right to vote upon it." (*Ex parte Holmes*, 5 Cowen, 426; Angell & Ames on Corporations, Sec. 131, *et post*; *Ex parte Barker*, 6 Wend. 509; 17 N. Y. 592; 7 Bosw. 524; 3 Kern. 500; 1 Paige, 590; 2 Barb. 204; 4 Pick. 405; *Green* v. *Seymour*, 3 Sandf. Ch. 285; *Ex parte Desdoity et al.*, 1 Wend. 98.)

The right of voting by proxy is not a general right, and

the party claiming such rights must show a special authority to do so. (1 Paige, 590.) If there was any ownership in the stock, as against the company, it was in Wells, Fargo & Co., and C. E. McLane could not vote it, because he was not the proxy of the owner.

*H. & C. McAllister*, for Respondents.

Upon the books of the company, Louis McLane, trustee, stands the owner of the ten thousand shares of stock. Can investigation be here collaterally made of the precise terms and conditions upon which he holds the stock as trustee? Suppose that a party in whose name stock stood on the books of the company had improperly obtained it, could this be examined at an election? Must stockholders not only show that apparently, but in truth and reality, they properly came by their stock, and own it, in order to entitle them to vote on it at election? We apprehend not. These are collateral matters, with which neither the corporation nor fellow stockholders have any proper concern.

The primary object of the creation alike of the stock and the corporation is to aggregate funds to accomplish the purposes of incorporation. All else touching this subject in the charter is merely modal. Will it be pretended that the company could not pay for construction of the road, materials, and machinery in stock? This has been repeatedly decided, upon the broad principle that it is in furtherance of the purpose of the corporation, that it is not necessary to go through the useless form of first paying money to the company for stock, and then requiring it to pay back the money. Yet, in all these cases, it might with equal force be urged that there should have been a money subscription. Upon principle and the language of the statute, which clearly contemplates that it may be otherwise stipulated, this is not necessary. (Stats. 1863, p. 612, Sec. 13; Ang. & A. on Corp., Sec. 113; 1 Redf. on Railroads, 439; *Goulard* v. *Castillon*, 12 Barb. 126; *Barber et als.* v. *T. & R. R. Co.*, 27 Verm. 766; *Hart* v. *Lanman*, 29 Barb. 410.)

By the Court, RHODES, J.:

I. The point that the proceeding is without authority of law is based upon a typographical error in the statutes of 1851, p. 443, Sec. 31. It appears from that section, as printed, that the whole Act of 1850, concerning corporations, was repealed; but the Act, as enrolled, shows that only Chapter III of the Act of 1850 was repealed. Chapter I of that Act, which includes the section under which the proceeding was instituted, was left in full force.

II. The proceeding is clearly of a judicial character. The controversy was heard and determined by the Judge in his official capacity, and his decision was a final determination of the rights of the parties to the proceeding. The fact that the proceeding was instituted before the Judge, and not the District Court, does not prove that the proceeding was not a judicial proceeding, nor that the decision does not amount to a judgment, for the Legislature is not prohibited by the Constitution from conferring upon the Judges authority to hear and determine actions and proceedings at Chambers. Such authority is granted in respect to writs of mandamus, certiorari, and quo warranto. We are of the opinion that this is a special proceeding; that the decision is a judgment, and that an appeal therefrom is given by section three hundred and forty-seven of the Practice Act; and such, we judge from the stipulation, was the view of the counsel who appeared before the District Judge.

III. The parties recited in their stipulation all the facts in the case, and agreed that the stipulation should be a part of the judgment roll, and that no other statement on appeal should be required. The facts therein recited took the place and served all the purposes of a finding of facts by the Court. No statement on appeal was necessary. All the questions presented arise upon what the parties have agreed shall constitute the judgment roll, and no specification of the errors or ground relied upon is required to be made in the record.

IV. The power of electing the Directors of a railroad corporation is lodged by the statute in the hands of the stockholders. The exercise of this power having been regulated by the statute, the corporation cannot, by its by-laws, resolutions, or contracts, either give or take it away. Were the statute silent in this respect, the election of the Directors, like the election or appointment of subordinate officers, would be subject to the regulation and control of the corporation, but the statute having expressly declared who shall be entitled to vote for Directors, its provisions are imperative upon the corporation, constituting a part of the law of its being; and the corporation has no authority to extend or limit the right, as regulated by the statute. The first section of the Act of 1861 (Stats. 1861, p. 607) provides that the first Board of Directors shall be elected by the subscribers to the stock, and subsequent sections provide that after the first election the Directors shall be elected by the stockholders—each stockholder being entitled to one vote for each share of stock which he owned for ten days next preceding such election. The clause, therefore, of the resolution of the Board of Directors giving Louis McLane authority to vote the stock transferred to him by the corporation, as well as the clause to the same effect in the agreement entered into by him with the corporation, was void.

It becomes necessary to ascertain the ownership of the stock voted upon by McLane. For this purpose the resolution of the Board of Directors, the receipt given for the stock and the agreement executed by McLane are to be construed together as constituting one transaction. The substance of the transaction is that Wells, Fargo & Co. advanced to the Placerville and Sacramento Valley Railroad Company the sum of two hundred and sixty-eight thousand dollars, and the railroad company, as security for the money so advanced, issued to Louis McLane, as the trustee for Wells, Fargo & Co., ten thousand shares of the capital stock of the railroad company, to be retransferred to the company upon payment of the indebtedness for the money so advanced, and

in proportional amounts as said payments should be made. The time of payment is not specified. The respondents contend that the transaction is neither a mortgage nor a pledge of the stock, but only amounts to a trust; and the appellants claim that the transaction constitutes a pledge. We are of the opinion that it is a pledge.

A pledge is a bailment of personal property as a security for some debt or engagement. (Story on Bailm., Sec. 268.) The general property in the thing pledged remains in the pledgor, and only a special property vests in the pledgee. A delivery to the pledgee of the thing pledged is essential to the contract, and until that act is performed the special property that the bailee is entitled to hold does not vest in him. In respect to most kinds of property, a delivery of the property to the pledgee, without any written transfer of the title, is sufficient to pass the requisite special property. Incorporeal property, being incapable of manual delivery, cannot be pledged without a written transfer of the title. Debts, negotiable instruments, stocks in incorporated companies, and choses in action generally are pledged in that mode. Such transfer of the title performs the same office that the delivery of possession does in case of a pledge of corporeal property. The transfer of the title, like the delivery of possession, constitutes the evidence of the pledgee's right of property in the thing pledged. The transfer in writing of shares of stock not only does not prove that the transaction is not a pledge, but the stock, unless it is expressly made assignable by the delivery of the certificates, cannot be pledged in any other manner. In *Wilson* v. *Little*, 2 N. Y. 443, the stock was transferred to the defendants, but the Court held that the contract amounted to a pledge of the stock. (See, also, *Jewitt* v. *Warren*, 12 Mass. 300; *Bowman* v. *Wood*, 15 Mass. 534; *Dewey* v. *Bowman*, 8 Cal. 145; Story on Bailm., Sec. 290, and following; Parsons on Cont. 595.) In *Dewey* v. *Bowman* it is said that the pledgee has not the legal title to the property, and lan-

guage of the same import is found in many cases. It was not intended to say in that case that the pledgee never receives the apparent legal title, but only that, as between him and the pledgor, the title, or more accurately, the general property, remained in the pledgor, for the subject matter of the contract was a lease which was assigned to secure the payment of a certain promissory note, and it was held that the contract was a pledge and not a mortgage. In *Wilson* v. *Little*, in speaking of the pledge of certain shares of stock, the Court say: "The general property which the pledgor is said to retain is nothing more than a legal right to the restoration of the thing pledged, on payment of the debt." A corporation, in pledging shares of its stock, which had not been issued at the time of making the contract, must, of necessity, issue them to the pledgee, or to some one for him.

The circumstance that the stock was issued to Louis McLane, as Trustee for Wells, Fargo & Co., instead of being issued in the name of the latter, does not alter the real nature of the transaction. McLane is described as the trustee of Wells, Fargo & Co., but his position and duties in respect to the stock, so far as either of the parties to the contract are concerned, is that of agent of the creditors. He is none the less a mere agent in the transaction because he is described as trustee. The transfer of the stock to him was in law a transfer to his principal, Wells, Fargo & Co. Had he been named as the agent of the creditors, there would be no room for doubt on this point. His true position in the transaction is to be determined, not by the title given to him, but by the acts and duties he is to perform; and these show that he bears the relation of agent to the creditors of the corporation.

The transaction lacks one essential element of a mortgage. A mortgage passes the title to the mortgagee, the mortgagor reserving the right to defeat the transfer and revest the title in himself by the performance of an express condition subsequent. Here no time was mentioned for the repayment of the money advanced, and the contract looked to the retrans-

fer of the stock to the corporation. It is not claimed, on the part of respondents, that McLane had any right to sell the stock, but it is admitted that he is to hold it until the money, or some part of it, is paid, and thereupon to retransfer the stock, or a proportional part of it, to the company. No other right in the stock is asserted for Wells, Fargo & Co. than that claimed for McLane. This evidently is not such a title as is held by a mortgagee of personal property. We are satisfied that the contract is a bailment of the stock, and we are unable to give it any place among the different kinds of bailment except that of a pledge.

It results from this view of the contract that, as between the parties, the general property in the stock is in the pledgor—that the railroad company is its owner.

V. The question here is not whether the pledgee or a trustee to whom stock has been pledged or transferred by a stockholder, and who appears upon the books of the corporation to be the owner, is entitled to vote; but it is whether the agent or trustee of the pledgee, who is described in the Certificate Book of the corporation as a trustee, and who holds as such trustee or agent certain shares of stock which were pledged by the corporation to its creditor, is entitled to vote such stock. The designation of McLane as trustee was sufficient to show that he did not hold the stock in his own right, and as the corporation was one of the parties to the contract, its officers are chargeable with notice of the manner in which he held the stock. The case falls within the principle of *Ex parte Holmes*, 5 Cow. 426, in which it was held that there could be no vote upon stock owned by the company, though held by trustees; that it was not stock to be voted upon by any one within the meaning of the charter or the general Act relating to that subject. Subsequent cases, like *Ex parte Barker*, 6 Wend. 510, though qualifying and restricting the broad language of *Ex parte Holmes* so as not to exclude the vote of a trustee upon the stock held in trust for a stockholder, have not questioned the doctrine that the stock belonging to the corporation, though held in the

name of trustees, was not entitled to be voted upon. This doctrine must command the assent of every one, unless it can be shown that a corporation can become a stockholder in the sense of the statute of its own stock, receiving from itself dividends, and responding to itself for calls for assessments, and being responsible for the debts of the corporation, first as a corporation, and second, as a stockholder.

VI. It is objected that an investigation cannot be here collaterally made of the terms and conditions upon which the trustee holds the stock. To what extent evidence, if objected to, would be admissible to prove such terms and conditions, it is unnecessary to inquire, for the case was presented to the Court below upon an agreed statement of facts, without reserving the question of the competency, relevancy, or admissibility of any fact in the statement, and it is now too late to raise the question. The judgment of the Court was invoked upon the facts recited in the statement.

VII. There is another view of the matter which appears to us to be equally decisive of the case. The whole Act proceeds on the theory that the certificates of stock are to be issued only upon the payment in full for the stock. Section fourteen is as follows: "Certificates of stock shall be issued, signed by the President and Secretary, in such manner as may be prescribed by the by-laws of the company, for *all stock paid up*, from time to time, in compliance with the requirements of such Directors, or that may be *fully paid in advance* of such requirements by the voluntary act of any stockholder of such company." This provision clearly negatives by implication the right to issue the certificates of stock in advance of payment. There are many provisions of the Act that lend support to this construction. The "Book of Stockholders" is required to contain the amount of cash actually paid to the company by the stockholders respectively for their stock. In the next section (twelve) it is provided that the stock shall be transferable in the manner provided by the preceding section, and upon the books of the company, upon proper assignment and delivery to the assignee

of the receipts for the installments paid on such stock, or the *certificates of stock, when fully paid.* The provison of the Act is general that all stockholders shall be liable to calls for assessments until the stock is paid up, and that payment may be enforced by suit and sale of the stock. The Act also authorizes the holders of the railroad bonds, with the consent of the corporation, to convert the *principal* into stock— that is, dollar for dollar. The manifest purpose was to place all stockholders upon an equal footing. The Act is not liable to the charge of inequality, if not absurdity, of restricting the corporation so that it could not issue the certificates of stock to the original subscribers to the stock, without payment in full, and permitting it to issue the remainder of the capital stock without payment.

Counsel have discussed the question whether the corporation can issue stock except in pursuance of a subscription; but that is not the question now before us, nor does it afford a test for its solution. It may be conceded that the corporation may issue its stock to its creditor in satisfaction of its debt, and the creditor may not be technically a subscriber to the stock, though he is substantially. In such case the creditor does that which is a prerequisite in every issue of stock —he purchases and *pays for* the stock. His demand stands in the place of so much money.

The provision of section thirteen, that the Directors may "call in and demand from the stockholders the sums by them subscribed, in equal installments of not more than ten per cent per month, *unless otherwise stipulated in the articles of subscription,* at such time as they may deem proper," instead of lending support to the respondents' position, that the stock may be issued without payment therefor, implies that payment must be made, and that the calls may be greater than ten per cent per month when the subscribers have so stipulated. The authority given in section four to the Directors to open books of subscription *upon such terms* as they may direct, does not permit them to receive subscriptions without *any terms*—that is, without payment or promise of payment

for the stock. And neither this provision, nor that of section nine, which is also relied on by the respondents, and which gives the Directors power "to make and·execute contracts of whatsoever nature or kind, fully and completely to carry out the objects and purposes of such corporation," abrogates the special provisions relative to the issuing of the stock. In *Clark* v. *Farrington*, 11 Wis. 325; *Cin. I.* & *C. R. R.* v. *Clarkson*, 7 Ind. 595; *Carr* v. *Le Fevre*, 27 Penn. St. 413, and other cases cited by the respondents, the question was considered whether the company could receive anything but money on the subscription for stock; but if the position is tenable that the stock might have been issued without payment in anything, we are confident that it would have been taken in some of those cases, and the discussion of that question would have been useless.

While the position that the corporation may issue its stock in payment of its indebtedness is not questioned, it does not follow that the stock may be issued to secure such indebtedness. Had the stock been issued in the usual manner, and afterwards become the property of the corporation, and been held in such a manner that it did not merge, the corporation might deal with it the same as any stockholder, unless prohibited by the statute; but the claim of authority to pledge the unissued stock necessarily assumes the very point in controversy—the authority to issue the stock without purchase or payment.

The capital stock of a corporation, previous to its being issued, cannot, in any proper sense, be called the property of the corporation. When the certificates of stock are issued to a stockholder, they are, in his hands, the muniments and evidence of his title to a given share in the property, income, and franchises of the corporation. (*Mechanics' Bank* v. *N. Y. and N. H. R. R. Co.*, 13 N. Y. 627.) The corporation possesses only the *right*, the *power* to issue the stock, and a condition precedent·to the exercise of the power is the purchase and payment for the stock. This restriction, if it may properly be so called, is not more unreasonable than those

relating to the amount of money the corporation may borrow and the rate of interest it may pay, and they all tend in some degree to protect the stockholders and creditors. If the power exists in the corporation to issue stock to secure a loan or indebtedness, it is practically unlimited, and the Directors may issue and pledge all the capital stock not held by stockholders as security for a trifling loan, and by the aid of the stocks thus issued, they may increase the capital stock, and pledge the new stock to secure another loan, and thus perpetuate themselves in power beyond the reach of redress on the part of the stockholders, who may have contributed much the larger portion of the assets of the corporation.

We are of the opinion that the shares of stock issued to McLane to secure the payment of the money advanced to the corporation, were illegally issued, and were not entitled to be voted upon at the election for Directors, and that the plaintiffs received a majority of the legal votes cast at the election.

Judgment reversed; and it is further ordered and adjudged that, at the election held on the 5th day of February, A. D. 1868, by the stockholders of the Placerville and Sacramento Valley Railroad Company, for the election of Directors of said corporation, C. W. Brewster, W. S. Burns, F. A. Bee, A. T. Melvin, R. Landecker, R. B. McBride, J. G. McCallum, W. H. Cooper, and O. H. Burnham, were duly elected Directors of said corporation.

SAWYER, C. J., concurring specially

This is an appeal from an order or judgment in a summary proceeding under section fifteen of Chapter I of the Act of 1850, concerning corporations, by a portion of the stockholders of a railroad corporation, to set aside an election of Directors. The section is as follows:

" Upon the application of any person or persons, or body corporate, that may be aggrieved by or may complain of any

election held by any corporate body, or any proceeding, act or matter in or touching the same, it shall be the duty of the District Judge of the district in which such election is held (reasonable notice having been given to the adverse party, or to those who are to be affected thereby, of such intended application) to proceed forthwith and in a summary way to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matters or causes of complaints, and thereupon establish the election so complained of, or to order a new election, or make such order and give such relief in the premises as right and justice may appear to the said District Judge to require; *provided*, that the said Judge may, if the case appear to require it, direct the District Attorney of his district to exhibit one or more information or informations in the nature of a quo warranto in the premises."

The respondents object that no appeal is authorized, and this Court has no jurisdiction to entertain the appeal. I can see no answer to this objection. The proceeding was not had under the Practice Act, and its provisions are inapplicable. The proceeding authorized by the section cited is special and summary, had before the *Judge, as such,* and not before the *Court.* The object, doubtless, is to give a speedy remedy, which may be pursued, in a perfectly clear case, at once before the Judge in vacation, wherever he may be found in the district at the time the emergency arises. The provision makes it " the duty of the District *Judge* * * * to proceed forthwith and in a summary way to hear the affidavits, proofs and allegations of the parties," etc. But it also permits him, in a case of great gravity or difficulty, or when the case is not clear—"if the case appear to require it"—to direct the District Attorney to exhibit an information in the nature of a quo warranto; that is to say, to require the proceeding to be had in the ordinary, regular, more deliberate and solemn mode provided in the Practice Act for determining such questions by the Courts of justice. But, so far as

the special and summary proceedings under section fifteen are concerned, I think the parties are limited to the remedy as there given. It is complete within itself. It was, to my mind, clearly never contemplated that there would be an appeal. The proceeding is at chambers before the Judge, and not a proceeding of the Court *as such.* The fact that the papers were afterwards attached together and marked filed, and called a judgment roll by the clerk, does not change its character. The proceeding does not purport upon its face to be a Court proceeding, and there is nothing authorizing it as a Court proceeding.

If the parties choose to adopt this mode of redress, I think they must be content with the remedy afforded. I am of opinion, therefore, that the appeal should be dismissed. But as my associates have disposed of the case upon other than jurisdictional grounds, I will add that, whether the stock in question is regarded as an ordinary pledge or as a trust, I concur in the conclusion that Mr. McLane was not entitled to vote upon it, upon the grounds somewhat generally stated in the fifth point of the opinion of Mr. Justice RHODES and upon the authorities therein cited.

CROCKETT, J., concurring specially.

I concur in the judgment and opinion to the effect that the stock held by the trustee did not entitle him to vote at the election of Directors; but I express no opinion as to the validity of the stock in the hands of the trustee, as a security for the debt to Wells, Fargo & Co.

SPRAGUE, J., concurring specially:

I concur in the judgment.

Mr. Justice SANDERSON, being disqualified, did not sit in this case.