WORTH et al. v. MARSHALL FIELD & CO. et al.

SAME v. MARSHALL FIELD & CO.

In re WORTH MFG. CO.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1917.)

Nos. 1477, 1478.

1. CORPORATIONS ⬤➾474—BONDS—RIGHT TO PLEDGE.
    A corporation may pledge as security for its debts its own bonds which have never been sold, and if the debt be not paid the pledgee stands as to the mortgaged property in as good a situation as one holding pledged bonds which had been sold and issued.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1854.]

2. CORPORATIONS ⬤➾474—BONDS—PLEDGE—INTEREST.
    Where a corporation pledged its bonds which had never been sold to secure a debt, and paid all the interest which had accrued on the debt, the pledgee cannot, after the corporation's bankruptcy, recover from the estate the amount of the interest coupons attached to the bonds, since there was no consideration received by the corporation, except the debt on which the agreed interest had been paid.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1854.]

3. CORPORATIONS ⬤➾472—BONDS—INTEREST COUPONS—HOLDER AFTER MATURITY.
    Any one taking an interest coupon attached to a corporate bond after the date of its maturity takes it subject to all outstanding equities, though as to the bond and subsequent coupons he may be a purchaser for value without notice.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1837, 1839, 1841.]

Appeal from and on Petition to Superintend and Revise, in Matter of Law, Proceedings of the District Court of the United States, for the Western District of North Carolina, at Greensboro, in Bankruptcy; James E. Boyd, Judge.

In the matter of the Worth Manufacturing Company, bankrupt. From a decree of the District Court permitting Marshall Field & Co. to recover from the estate interest on certain bonds pledged as security, Hal M. Worth and others appeal, and also file a petition to superintend and revise. Decree reversed, and petition to superintend and revise dismissed.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

---

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

A. B. Kimball, of Greensboro, N. C. (R. R. King, of Greensboro, N. C., on the brief), for appellants and petitioners.

R. C. Strudwick and William P. Bynum, both of Greensboro, N. C., for appellees and respondent.

ROSE, District Judge. The bankrupt is a North Carolina corporation. In 1902 it mortgaged its property to secure $100,000 of 6 per cent. bonds, to which semiannual interest coupons were attached. It sold $26,000 of these bonds outright, and pledged, without selling, $52,000 more to secure various sums borrowed by it. The controversy at the bar involves the coupons from 1902 to 1913 on $15,000 of these pledged obligations. Shortly after the execution of the mortgage the bankrupt pledged these $15,000 of bonds to a New York firm, to which it owed precisely that sum. For 7½ years, or until about June 1, 1910, these bonds remained in the hands of the firm mentioned, or of a New York corporation which in 1907 had taken over both the debt and the security for it. During all this time the bankrupt regularly and fully paid the interest on its indebtedness.

At or shortly before the date last mentioned, appellee became interested in the bankrupt, and apparently took control of it. At all events, thereafter, and until the adjudication, of the bankrupt's seven directors, four were employés of the appellee. On or about the same time the latter took over the $15,000 debt owing the New York corporation and the bonds by which that debt was secured. Thereupon the bankrupt gave appellee a new collateral note by the terms of which the bonds were made liable, not only for the $15,000, but for every other sum which the bankrupt might at any time owe appellee. This particular note matured 6 months later. It was then surrendered, and the bankrupt gave in its place an ordinary promissory note, which said nothing about collaterals, although the appellee continued to hold the bonds. Some months after the second note was given to appellee, it began making further advances to the bankrupt, and continued doing so until they aggregated $45,000, in addition to the original indebtedness of $15,000, or $60,000 in all. The interest on the entire sum was paid until January 1, 1913.

On October 4, 1913, a petition in bankruptcy was filed against the bankrupt, upon which adjudication followed ten days later. In the bankruptcy proceedings the property subject to the mortgage was sold free of liens. It realized just about enough, after defraying taxes and other preferred claims, and costs of the administration, to pay the principal of the outstanding bonds and a few months' interest thereon, which at the time of the sale the creditors generally supposed was all that was owing. A few days or weeks later the appellee made claim to participate in the distribution of the proceeds as the holder, not only of the $15,000 of bonds, but also of $9,900 of coupons still attached to them, and representing interest on them from the original execution of the mortgage in 1902 until the adjudication in bankruptcy. If its right so to do shall be sustained, the other persons who hold bonds as owners, and most of them who hold them as pledgees, will receive less than the principal due them.

Appellants say that the return in 1910 by the appellee of the collateral note ended any right that note had given it to hold the bonds for any indebtedness other than the $15,000 for which they had always been pledged, and that certain things which took place at the creditors' meeting at which the sale of the mortgaged property was confirmed estop appellee from asserting the claim it now puts forward. We do not find it necessary to pass upon either of these contentions. Assuming, but not deciding, that neither of them stands in appellee's way, nevertheless its claim cannot be sustained.

[1-3] A debtor may pledge as security for its debts its own bonds which have never been sold. If the debt be not paid, the pledgee of these otherwise unissued bonds stands as to the property mortgaged to secure them in as good a situation, with reference to their principal and any interest which may have accrued on them, as does one who holds pledged bonds which have been sold and issued. So much is too plain to require either elaboration or citation of authority, but the question upon which the decision in this case must turn is: Did any interest accrue upon these bonds at any time prior to January 1, 1913? There cannot be interest without principal. One cannot become liable for interest unless he owes a principal sum, nor can he become obligated for more interest than that which represents the rate which he has, by expression or implication, bound himself to pay. The bankrupt until January 1, 1913, paid full interest on all sums due by it to the appellee or its predecessors as pledgees of these bonds. It owed nothing on the face of the bonds, because it had never received anything for them, other than the money upon which it had paid full interest. In consequence, no interest accrued upon these bonds until after default in the payment of interest on the principal sum for which they were pledged. At the time appellee made its additional advances, aggregating, as above stated, $45,000, it knew that the bankrupt had up to that time paid all interest on the principal of its indebtedness and it thereafter received all interest on its entire claim up until the beginning of 1913. Moreover, any one taking a coupon after the date of its maturity, takes it subject to all equities then outstanding against it, although as to the bond itself, and as to other coupons maturing at subsequent dates, he may be a purchaser for value without notice.

From the time the original loan was made in 1902 until some time in 1911 the bankrupt owed to appellee and to appellee's predecessors the sum of $15,000. This sum was represented by its promissory notes. It did not owe an additional $15,000 represented by its bonds. The latter were mere evidences that their holder was secured by $^{15}/_{78}$ of the mortgaged property. So long as the debtor paid the interest on the $15,000 it owed, no interest on the bonds could accrue, for the simple reason that the bonds represented no other principal debt than that upon which interest had been paid. In this respect there is a difference between bonds which the maker has once sold and bonds which never have been sold. In the former case the maker has received a consideration for the bonds, and it owes their face. In the other case, it has received nothing other than the debt for which the bonds were pledged, and only one interest charge can run for that debt.

The matter in controversy is brought up both by appeal and by pe-

tition to superintend and revise. It follows, from what has been said, that in No. 1477, which is the appeal, the decree of the District Court must be reversed. The petition to superintend and revise will be dismissed.