HEATH v. PORT OF PARA et al.

(District Court, S. D. New York. January 29, 1920.)

CORPORATIONS ☞474—PLEDGEES OF BONDS HELD "BONDHOLDERS" AND ENTITLED TO VOTE AT A MEETING OF SAME.

Under the terms of a deed of trust securing an issue of corporation bonds, pledgees of bonds pledged by the corporation to secure its own debts *held* "bondholders," and entitled to vote at a meeting of bondholders held pursuant to provisions of the deed of trust to determine future action.

In Equity. Suit by George B. Heath against the Port of Para, the National Trust Company, Limited, as trustee, and the Empire Trust Company, as trustee. On application of the Empire Trust Company, trustee, for instructions.

This is an application by Empire Trust Company, as trustee, as to the course to be pursued at the meeting of the holders of bonds issued under the deed of trust of which Empire Trust Company is trustee, in respect of the acceptance of votes by or on behalf of bonds issued under said deed of trust pledged by defendant Port of Para, and for other and appropriate relief.

The Empire Trust Company is the trustee under what is known as the second division deed of trust, dated March 1, 1909, and made by defendant Port of Para to secure an issue of £5.000,000 of 5 per cent. 60-year bonds, hereinafter referred to as second division bonds. Bonds of the par value of £4,996,000 have been certified by the trustee and issued by Port of Para. Of these there have been £3,736,089 par value issued to the public and £1,259,911 issued as security for loans to the following named companies or corporations:

| | |
|---|---:|
| Bank of Scotland | £312,000 |
| Madeira-Mamoré Railway Company | 156,000 |
| Para Construction Company, Limited | 156,000 |
| Société Générale and Banque de l'Union Parisienne, jointly | 635,911 |
| | £1,259,911 |

In due course and in accordance with the provisions of the deed of trust, a meeting of the holders of the second division bonds is about to be held, and at such meeting various resolutions will be submitted, which, to be effectively passed, will require certain majorities of said holders of bonds. The meeting in question is expected to deal with important matters involving the future of

the Port of Para, as well as the financial arrangements and relations of said corporation with its creditors, whether bondholders or otherwise.

The defendant Port of Para takes the position that it desires that the holders of the pledged bonds shall vote said bonds, if such course is proper, and calls attention to the fact that, if the bonds were reduced to possession, the result would involve considerable loss to defendant Port of Para. The French bank creditors who hold the bonds, in order to assist the reorganization or readjustment of the financial affairs of defendant Port of Para, prefer to continue the present status, if they have the right to vote on the pledged bonds at the meeting above referred to. Some changes apparently have taken place in respect of the holdings of the Bank of Scotland, but·a decision in regard to the status of these creditor banks which have appeared will govern all similarly situated.

Masten & Nichols, of New York City, for plaintiff.

Olin, Clark & Phelps, of New York City (W. G. Murphy, Jr., of New York City, of counsel), for defendant Empire Trust Co.

Sullivan & Cromwell, of New York City (William Nelson Cromwell and Philip L. Miller, both of New York City, .of counsel), for respondents Banque de l'Union Parisienne and Société Générale pour Favoriser la Developement du Commerce et de l'Industrie en France, appearing specially, and for defendant Port of Para.

David T. Davis, of New York City, for defendant Madeira-Mamoré Ry. Co.

George W. Schurman, of New York City, for National Trust Co., appearing, but not participating.

MAYER, District Judge (after stating the facts as above). The meeting which is about to be held will be conducted according to what is known as "the second schedule," attached to and a part of the deed · of trust. This is a form of procedure familiar in English deeds of trust, whereby a meeting of bondholders is held and such meeting conducted generally in accordance with procedure outlined in the deed of trust.

The deed of trust securing these second division bonds defines the expressions "the bonds" and "the bondholders" as follows:

" 'The bonds' means the bonds of the company of each and every series issued hereunder and for the time being outstanding and entitled to the benefit of the security hereby created. 'The coupons' means the interest coupons attached to the bonds.

" 'The bondholders' means the bearers for the time being of the bonds, or the registered holders for the time being if the bonds be registered under the provisions of these presents."

It is undisputed that Port of Para had the right to raise money by way of pledging its bonds, as well as by way of selling them. Worth v. Marshall Field & Co., 240 Fed. 395, 397, 153 C. C. A. 321; William Firth Co. v. South Carolina Loan & Trust Co., 122 Fed. 569, 573, 59 C. C. A. 73. The deed of trust specifically contemplates such use of its bonds. Paragraph 32 provides as follows:

"32. Should the company pledge any bonds secured hereunder or otherwise deliver or deposit any bonds so as to entitle the company to redeem or get back the same and should the company redeem or get back the bonds so pledged or otherwise delivered or deposited then the company may from time to time *reissue* the same or any of them or surrender to the trustee for

cancellation the said bonds or any of them and the trustee shall cancel the same and shall certify and deliver to the company or its order an amount of bonds secured hereunder equal to those canceled and the last-mentioned bonds or the bonds so reissued shall be secured hereby equally with all other bonds issued or to be issued hereunder and without preference or priority one over another *and the holders thereof from time to time shall be bondholders hereunder* and shall be entitled to all the rights security and advantages given hereby."

It is to be noted that there is a specific provision that bonds redeemed from pledge may be "reissued." This shows that bonds issued by way of pledge are lawfully issued and outstanding bonds of the company. The provision that bonds so reissued shall be secured equally with all other bonds issued or to be issued, and that the holders thereof shall be bondholders, was clearly inserted (the mortgage being largely in the English form) in order to avoid the result of the decision in In re Perth Electric Tramways, Ltd., [1906] 2 Ch. 216, in which it was held that debentures which have been issued by way of pledge to secure a debt of the issuing company cannot be reissued after having been redeemed from the pledge.

The deed of trust nowhere makes any distinction whatever between pledgees of the bonds from the company and purchasers of bonds from the company. From the intent to be gathered from the whole structure of the instrument, and applying familiar rules of construction, it seems plain that in such circumstances as are here disclosed, a pledgee from the company of its own bonds was intended to be a bondholder within the meaning of the word "bondholder" as defined in the deed of trust. If the contrary had been the intention, the word "owner" or some other apt word could have been used.

Under the provisions of the deed of trust as appropriately construed, there is no reason why there should not be accorded to the holder of a corporate bond, who, as here, holds such bond "by way of pledge from the issuing corporation for the corporation's own debt" every right of a bondholder consistent with the right of the corporation to redeem. Both purchasers and pledgees of bonds from the corporation are creditors secured by the security of the bonds, and where voting rights are given to the bonds, and thereby it is intended to confer on the bondholders the power to deal with the security by majority vote, pledgees of this character of pledge are equally interested with purchasers in having a voice in dealing with the security in question.

It is plain that the corporation in such circumstances would not have the power to vote, and it may fairly be assumed that it was intended that the voting power should reside somewhere, and there is no reason why this voting power should not be possessed by a pledgee, where the pledge is of the character hereinabove described.

It is unnecessary, for purposes of decision in this case, to determine what the rights of a pledgee would be who holds a collateral pledge in the ordinary course of business under some familiar form of collateral note, nor is it necessary to determine the rights of a pledgee of corporation stock pledged by a corporation to secure its own debt. Yet, while the precise question here under consideration has perhaps not been the subject-matter of judicial decision, the view

262 F.—52

here expressed seems to be supported, to some extent, at least, either directly or inferentially, by Vail v. Hamilton, 85 N. Y. 453, and Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359. In Brewster v. Hartley, 37 Cal. 15, 99 Am. Dec. 237, the case went off, among other grounds, on the point that the company had no right to pledge its stock. In Thomas v. International Silver Co., 72 N. J. Eq. 224, 73 Atl. 833, the case arose under a New Jersey statute (P. L. 1896, p. 277, § 38) which prohibited corporations from voting their stock directly or indirectly, in certain circumstances.

It must be remembered that a pledgee of bonds of a corporation pledged by the corporation to secure its own debt is not a trustee. In voting on such bonds the owner thereof is not voting directly or indirectly for the corporation. When he votes on such bonds, he is voting like any other creditor in his individual interest and to protect his individual debt.

As the character of the meeting of bondholders to be held in pursuance of the provisions of the deed of trust is, among other things, to give the bondholding creditors of the corporation full opportunity to determine by appropriate vote what their future financial relations with the corporation shall be, it is well within the intent of the deed of trust and its whole procedural plan that the holders of bonds pledged as these were, should have every opportunity to vote in the same manner as the outright owners of bonds have their rights.

Such a course, in my opinion, safeguards the rights of all concerned, does no injustice to the other bondholders, and prevents an unnecessary and perhaps heavy loss to the corporation which would occur if the pledgees, in order to assert their rights, were compelled to reduce the bonds to possession.

In view of the foregoing conclusions, the trustee is instructed to accept the vote of the owners of these pledged bonds at the meeting to be held. In order, however, to avoid any question which might result, if these votes were not separately counted or tallied, the trustee is instructed to keep a record of the votes cast by the owners of the pledged bonds referred to.

An order will be filed in accordance herewith.