FARMERS' LOAN & TRUST CO. v. DETROIT, B. C. & A. R. CO.

In re KEATING.

(Circuit Court, E. D. Michigan. October 1, 1895.)

1. RAILWAY MORTGAGE—STATE REGULATIONS.
   In the absence of a decision upon the question by the supreme court of the state, the court will follow the decision of the supreme court that railway mortgages are not within the purview of state statutes regulating mortgages of chattels.

2. SAME—PREFERENCE OF CLAIMS—RECEIVERSHIP.
   In a suit to foreclose a mortgage on the property and net earnings of a railroad company, a receiver was appointed, to whom the company voluntarily paid over earnings received before his appointment. *Held,* that a holder of a judgment, on account of personal injuries rendered before the bringing of the foreclosure suit, could not claim such earnings as against the receiver, he having failed to proceed against them before their payment to the receiver, or to obtain an injunction against such payment.

3. SAME.
   A judgment against a railroad company for personal injuries is not entitled to payment out of moneys in the hands of a receiver before bonds secured by a previous mortgage.

4. SAME—RIGHTS OF BONDHOLDERS—SUBROGATION.
   Where the receiver by order of court pays, out of moneys to which the bondholders are entitled, the wages of the employés, and likewise taxes constituting a first lien on the property, the bondholders are entitled to be subrogated to the priorities of the employés and the state.

5. SAME—FORECLOSURE SUIT—EFFECT.
   After the institution of a suit to foreclose a mortgage covering all the property and net earnings of a railroad company, no lien on such earnings can be acquired by a general creditor.

Suit by the Farmers' Loan & Trust Company against the Detroit, Bay City & Alpena Railroad Company to foreclose a mortgage. On petition by Thomas Keating, by his next friend, to have a lien de-

clared in his favor on certain funds in the hands of the receiver appointed in the suit.

C. A. Jahraus and N. J. Connine, for petitioner.

Russell & Campbell, for receiver.

SWAN, District Judge. On the 1st day of January, 1883, the Detroit, Bay City & Alpena Railroad Company, a corporation organized and existing under the laws of the state of Michigan, for the purpose of obtaining money for the completion of its road, executed its bonds to the sum of $2,500,000 for moneys loaned by the Farmers' Loan & Trust Company, a corporation organized under the laws of New York, and a citizen of the state of New-York, and, to secure said bonds, executed a trust deed of even date therewith upon the property of the railroad company therein described as follows, viz.:

"All the railroad and all the railroad property of the Alpena Company lying and being in the state of Michigan; that is to say, the entire main line of railroad owned by it, extending from Au Sable to its junction with the Michigan Central Railroad at the station called 'Alger,' and all the branches and sidings of the Alpena Company's railroad, as the same are used in the working of said railroad, amounting, in all, to about twelve miles, and all the property of every kind and nature now owned, or which may hereafter be acquired by, in the name, or on behalf, of, the Alpena Company, as part of, or for use in connection with the construction, maintenance, working, and operation of, said railroad, main line, extensions, branches, and sidings from Alger to Alpena, in Alpena county, and also all rights, privileges, and franchises of the Alpena Company, and all the net income and revenue arising from the use and operation of its said railroad and property."

On the 7th day of June, 1887, by way of confirmation and further assurance of the mortgage or deed of trust of January 1, 1883, the railroad company (in the body of both said deeds of trust or mortgages designated, for brevity, as the "Alpena Company") conveyed to the Farmers' Loan & Trust Company, as trustee, all its property and franchises in said second trust deed or mortgage particularly described by the route of the railroad company, and specifying with more particularity the sidings and branch lines, as well as the main line; the length of the railroad, inclusive of these, being stated in said second trust deed as follows: "Making, in all, main and branch lines, and sidings built to date, about $183^{34}/_{100}$ miles of track, more or less." Said second trust deed also contained the following further description of the property conveyed:

"And all the property, of every kind and nature, now, or which may hereafter be, acquired by, in the name or on behalf of, the Alpena Company, as a part of, or for use in connection with the construction, maintenance, working, and operation of, said railroad, main lines, extensions, branches, and sidings from Alger, in Arenac county, to Alpena, in Alpena county, and also all rights, privileges, and franchises of the Alpena Company, and all the net income and revenue arising from the use and operation of its said railroad and property."

By the first trust deed above mentioned it was provided that:

"If the mortgagor company should fail to pay the interest or principal of any of the bonds issued thereunder and secured thereby, or any part thereof, when the same should be due and payable, or in due time, all taxes or assessments lawfully imposed upon the premises and property thereby

granted, and should remain in default, in either or any of these particulars, for the period of sixty days, then, and in such case, it should be lawful for, and, upon the request in writing of the holders of at least one-tenth in amount of said bonds then outstanding and unpaid, it should be the duty of, the trustee, its successor or successors, to enter upon and take possession of said railroad, and its personal and other property, and any part thereof, and either the said premises and property, and every part thereof, in its own right, or as the agent of the said mortgagor company, or the complainant, or its successor or successors, as its discretion might, and, on the request in writing of one-tenth in amount of said bonds then outstanding, should, cause said mortgage to be foreclosed, either by proper proceedings therefor to be taken in a court of competent equity jurisdiction, or by advertisement and sale under the statute of the state of Michigan in that behalf made and provided, as the trustee should elect."

Both of these trust deeds contain the usual detailed provisions of such instruments declaratory of the rights and obligations of the respective parties. These trust deeds were duly recorded in the offices of the register of deeds of the several counties through which the road ran, as early as July 7, 1887, but neither was ever filed as a chattel mortgage. The mortgagor failed to pay the interest upon its bonds which fell due July 1, 1893, and having remained in default for more than 60 days, on the 4th day of September, 1893, complainant filed this bill, praying that it might be placed in possession of the mortgaged premises personally, or that a receiver might be appointed of the rights, franchises, and property conveyed by the trust deed, with the usual power and authority to operate the railroad, and praying, also, the usual decree of foreclosure and sale of the mortgages, with the proper and customary incidental relief to that end. No appearance was entered for the mortgagor, and a decree pro confesso in favor of complainant was duly entered.

In accordance with the prayer of the bill, complainant, on September 5, 1893, applied for the appointment of a receiver, and the parties were heard upon this motion. The court took under advisement the names of the persons suggested for the receivership, and on the 23d day of October, 1893, with the consent of all the parties in interest, Don M. Dickinson was appointed receiver. In September, 1891, while the railroad company was operating its road, the petitioner, Thomas Keating, a minor, while riding as a passenger upon one of its trains, was injured through the negligence of the railroad company, and by William Drager, his next friend, brought an action for damages against the company in the circuit court for the county of Iosco on the 5th day of April, 1892. The cause came on for trial in August, 1893, and the plaintiff obtained a verdict and judgment therein for the sum of $10,000 against the mortgagor corporation. For this sum, and the costs in said cause, taxed at the sum of $143.30, an execution was issued out of the said circuit court for the county of Iosco August 31, 1893, returnable October 31, 1893, in favor of the plaintiff, against the goods, chattels, lands, and tenements of the railroad company. This writ was levied by the sheriff of the county of Iosco on the 12th day of September, 1893, upon 3 locomotives and 450 tons of soft coal, the property of the railroad company. The property seized was duly appraised, and a notice of the sale thereof posted, as required by the

laws of Michigan.   Upon the petition of the receiver, reciting the
levy upon said property, the purpose and threat of the sheriff to
sell the same under his levy, and praying that the sale of the prop-
erty might be restrained, on the ground, among other things, that
the same, at the time of the levy, was in the custody of this court,
under the bill filed herein, and was not subject to be taken under
process of any other court, an order was issued and served, calling
upon Keating, his attorneys and counselors, and the sheriff, to
show cause why said sale should not be enjoined, and the seizure
of the property taken under execution be punished as a contempt
of this court.   A hearing was had upon the petition and the re-
spondent's answer thereto on the 13th of November, 1893, when it
was adjudged and decreed as follows:

"(1) The engines and coal described in the petition are included within
the lien of the mortgage under foreclosure in this cause, and that the re-
ceiver is entitled to the possession of the same; (2) that T. P. Coe, sheriff
of Iosco county, be, and he is hereby, commanded to surrender forthwith
to the said receiver the possession of the said three engines and the four
hundred and fifty tons of coal levied upon by him, as set forth in said peti-
tion; (3) that said T. P. Coe, sheriff of Iosco county, and said Thomas
Keating, by William Drager, his next friend, be, and they are hereby, per-
petually enjoined from attempting to sell any or all of the said engines and
coal, and from attempting in any manner to interfere with the possession or
control of the same by said receiver."

No appeal was taken from this decree and order, and the same
still stands in full force and effect.

On the 28th of December, 1893, the receiver filed his petition in
this court, setting forth that September 29, 1893, petitioner, Keat-
ing, had taken out a writ of garnishment in said cause in the circuit
court for the county of Iosco, and on the 21st day of October, 1893,
a second writ of garnishment in the same cause and court, against
Nelson and Barney Mills, of Marysville, St. Clair county, Mich., and
that these writs were served, respectively, on the 2d and 23d days
of October, 1893.   Garnishees, Nelson and Barney Mills, had filed
written disclosures to said writs of garnishment, admitting that, at
the time of the service of the first writ, they were indebted in the
sum of $1,329.07 for freight bills rendered the said garnishees by
the railroad company, and that, at the time of the service of the sec-
ond writ, they were indebted, for a like consideration, to the rail-
road company, in the sum of $1,688.88, making a total indebtedness
upon the two writs of $3,017.95; that the garnishees, on filing these
disclosures, obtained in the state court an order citing the receiver
to interplead in the garnishment proceeding, and to file its claim
to the moneys garnished.   The receiver, insisting that all the in-
debtedness of the said Nelson and Barney Mills to the railroad com-
pany accrued at and after the filing of the bill in this cause, and
became due and owing to him as receiver, and denying the right of
Keating to interfere, by said garnishment proceedings, with said
indebtedness owing from the garnishees to the railroad company,
prayed and obtained an order of the court that the garnishees show
cause why they should not be ordered to pay the amount disclosed by
them to the receiver, and that Keating and Drager be restrained
and enjoined from taking any further proceedings under said writs

of garnishment against said Nelson and Barney Mills.   A temporary restraining order, prohibiting further proceedings against the garnishees pending the hearing and decision of the order to show cause, was issued.   To this order Keating made return, protesting against the jurisdiction of the court over the subject-matter of the petition of the receiver, and insisted: (1)   That the appointment of the receiver was, by agreement between the complainant and the defendant in the principal cause, not to take effect until on and after November 1, 1893, and that the receiver did not take possession of the property of the railroad company until said 1st day of November.   (2) The respondent denied that the mortgage to be foreclosed was a first lien upon all the property of the railroad company at the time of this execution, or upon property since acquired, and denied that the petitioner, under said mortgage, was entitled to the net income or revenue arising from the use and operation of the railroad and property, and insisted that such income and revenue, accruing before November 1, 1893, was subject to legal process for the payment of respondent's said judgment of $10,000 and costs. That the fare paid by Keating to the railroad company at the time he was injured (September 21, 1891) inured to the use and benefit of the complainant as trustee under the mortgage, and that his said judgment for damages and costs ought equitably to be declared a prior lien on the property of the railroad company to that of the bondholders under the mortgage.   Insisted upon the validity of the proceedings in garnishment, and asserted his right to hold the sums disclosed as owing by the garnishee, alleging that the same were revenues of the railroad company, which accrued prior to the 23d day of October, and the 1st day of November, 1893, and that the moneys garnished accrued for freight charges owing the railroad company during its operation of its road, were merely a debt owing said company, and not net income, within the terms of the mortgage. On March 26, 1894, after a full hearing upon the petition, and the cause shown in response thereto, the court decreed that the moneys garnished were covered by the mortgage, the garnishees were commanded to pay the same to the receiver, and the petitioner, Keating, was perpetually enjoined from attempting in any manner to pursue these funds.   No appeal was taken from this order and decree, nor any change made therein, and the garnishees have paid the moneys as ordered.

Under his petition, Keating, on July 9, 1895, again asked to have applied to the satisfaction of his judgment the moneys disclosed as owing by Nelson and Barney Mills to the railroad company, on the ground that the same constituted part of the earnings of the railroad prior to the 23d day of October, 1893, the date of the appointment of the receiver, and also that he might be declared to have a lien upon the sum of $6,859.12, which was paid over by the president of the railroad company to the receiver before October 23, 1893, and which, by a stipulation of facts filed July 9, 1895, it is admitted constitute a part of the net earnings of the railroad company for the months of September and October, 1893.   This stipulation also admits:   That the earnings of the said railroad company for the

months of September and October, 1893, were as follows: September: gross earnings, $30,573.59; net earnings, $7,261.32. October: gross earnings, $18,835.87; net earnings, $6,573.46. And that, subsequent to his appointment, and in conformity with the order of the court appointing him, the said receiver made the following payments for accounts against said railroad company accruing prior to his appointment, to wit:

For pay roll,    August,    1893..................................... $ 6,200 00
    "    "    "  September,  1893.....................................   7,000 00
    "    "    "  October,   1893.....................................   7,000 00
For state taxes,           1892.....................................   7,336 42
                                                                      _____
    Total ...........................................................  $27,536 42

—That said mortgagees never took possession of any of the property of said defendant, under its mortgage, until the possession taken by said receiver after his appointment. It is also admitted that to the judgment of the circuit court for the county of Iosco in favor of said Keating, and against the railroad company, the receiver, by leave of the court, took a writ of error from the supreme court of Michigan, where the judgment in said cause was affirmed. 62 N. W. 575. On July 9, 1895, argument was had upon the claim of the petitioner for the payment, from the proceeds of the sale of the mortgaged property, of Keating's judgment for damages and costs, the court having, by its order, reserved from distribution a portion of the fund received from the sale of the mortgaged property, to answer any claims that might be established against the same as entitled to preference over the claims of the bondholders. The contention of the petitioner upon this last hearing resolved itself into three propositions: (1) By his levy upon the engines and coal, and the garnishment of the moneys owing from Nelson and Barney Mills to the railroad company, petitioner acquired an equitable lien on said property and moneys; (2) that the moneys paid by the president of the company to the receiver, which had accrued from earnings prior to October 23, 1893, were not subject to the lien of the mortgage, and should be appropriated to the satisfaction of his judgment; and (3) that complainant's mortgage, so far as it covers personal property, is void as against creditors, because not filed with the city clerk of Detroit, where defendant resided. The effect of failure to file the trust deed as a chattel mortgage is not material here. In the conflict of authority which exists upon that question, this court, in the absence of a decision upon it by the supreme court of Michigan, would follow Hammock v. Trust Co., 105 U. S. 77, 92, holding that railway mortgages are not controlled by the statutes regulating the mortgage of chattels.

So far as respects the petitioner's right to the enforcement of the levy made upon the engines and coal, all question has been put at rest adversely to petitioner by the decree of the court directing the surrender of that property to the receiver, and awarding a perpetual injunction against the petitioner from interference therewith, and commanding the sheriff to restore said property to the receiver. By its decree of November 13, 1893, it was held that the engines and coal were covered by the terms of the mortgage, and the receiver

was entitled to the possession thereof.   No appeal has ever been taken from this decree, and it has become res adjudicata upon the issue joined between the parties as to the right of the petitioner to have said property applied in satisfaction of his judgment, under the process levied upon the same.

The claim of the petitioner to the moneys owing from Nelson and Barney Mills to the railroad company cannot be sustained for the same reason as that which bars his claim to the locomotives and coal. On March 25, 1894, after full hearing, it was decreed that the moneys disclosed to be owing were due to the receiver, the garnishees were commanded to pay the same to him, and a perpetual injunction was awarded, enjoining petitioner from further pursuing the same.   No appeal was ever taken from this decree and order, and it concludes all further contest over the status of the fund garnished.

The remaining question arises upon the alleged equity of the petitioner to the sums paid by the railroad company to the receiver from earnings of the road which had accrued prior to October 23d. This fund,—$6,859.12,—it is contended, was not subject to the lien of the mortgage, but is the property of the company; and its appropriation to the claims of the bondholders is a wrong to petitioner, which should be redressed by applying it to the satisfaction of his judgment against the mortgagor, whose property it is said to be. The argument in support of this claim assumes—and probably correctly—that the decrees denying the validity of the levy and of the garnishment proceedings were determinative only of the petitioner's right to enforce the application of the property levied upon and the funds garnished to the satisfaction of his judgment, but do not preclude his resort to other property of the judgment debtor, to which he can establish his claim.   The fundamental proposition in support of the claim to the fund now in question is that, under the following clause in the mortgage, descriptive, in part, of the property conveyed, viz. "all the net income or revenue arising from the use or operation of its railroad and property," complainant has no right to any income which accrued prior to the receiver's appointment, and, as a corollary from this proposition, that petitioner having, "by his garnishment and this petition, a first claim to and levy upon these funds, they should be applied to his debt."   Had petitioner acquired a lien by legal proceedings, or otherwise, upon the earnings of the railroad company made prior to the commencement of this suit, a different question would have been presented, and, under the doctrine laid down in the case of Gilman v. Telegraph Co., 91 U. S. 603, 617, he doubtless could have maintained his claim, or could have garnished the funds of the company in the hands of its agents, so long as the mortgagor was in possession of the property, or at any time before the proper judicial authority should interpose, because the possession of the earnings by the mortgagor, which was impliedly permitted by the terms of the mortgage, would render such earnings liable to the creditors of the company as fully as if the mortgage never existed.   But, if the fund here in controversy was liable to seizure at the instance of creditors, no step was taken by petitioner before this suit was commenced to arrest it in the hands of the mortgagor or its agents.   Petitioner delayed pro-

ceeding against it until the company had paid it over to the receiver, into whose hands it came, unburdened by any lien in favor of petitioner. By the terms of the mortgage, if the mortgagor failed to pay the interest or principal of any of the bonds which it was made to secure, or any part thereof, when the same were due and payable, or, in due time, all taxes or assessments lawfully imposed upon the premises and property mortgaged, and should remain in default, in any or either of these particulars, for the period of 60 days, and upon other conditions, not necessary here to mention, it became lawful for the trustee, upon request in writing of the specified number of bondholders, to enter upon and take possession of all the mortgaged property, and, among other things, to receive the income and profits thereof, and to apply the net income and profits to the payment of the principal and interest of the bonds then outstanding; or the trustee, his successor or successors, might, in its discretion, and on like requests of the specified number of bondholders, cause the mortgage to be foreclosed, either in equity, or by advertisement and sale, under the statutes of the state of Michigan. Upon such sale, the trustee, and its successor or successors, were authorized to apply the net proceeds of the sale to the payment of the bonds. No lien having been acquired upon the sum paid by the company to the receiver, nor any injunction having been obtained against the payment thereof, but the same having been voluntarily paid by the mortgagor, such payment affords no cause of complaint to petitioner. If that sum had been received from earnings of the road made prior to the institution of this foreclosure suit, it is doubtless true that the payment could not have been enforced against the objection of the mortgagor; but the right to make or withhold it was personal to the mortgagor, and, under the circumstances of this case, could not be interfered with or prevented by the petitioner, or any other unsecured creditor of the mortgagor, having no superior equity to that of the trustee for the bondholders.

The theory of petitioner's claim is an extension and misapplication of what is ruled in Fosdick v. Schall, 99 U. S. 252, and repeatedly since declared by the same court, that—

"The income out of which the mortgage is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements. Every railroad mortgagee, in accepting his security, impliedly agrees that the current debts, made in the ordinary course of business, shall be paid from the current receipts, before he has any claim upon the income."

This, however, affords no warrant for the contention that all the liabilities incurred by the railroad company in the operation of its road before the mortgagee demands possession, or before the appointment of a receiver, are to be rated in the category of current debts and expenses, entitled to preference over the claims of the bondholders. As elsewhere said in the case just cited, the expenses and debts which are held prior in equity to the mortgagee's debt are "outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property." There is nothing in that case, nor in the subsequent decisions of the court, extending this

preference to other classes of claims.    This is expressly so ruled in Kneeland v. Trust Co., 136 U. S. 89, 97, 10 Sup. Ct. 950; St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I. Ry. Co., 125 U. S. 658, 673, 8 Sup. Ct. 1011; Thomas v. Car Co., 149 U. S. 110, 13 Sup. Ct. 824. Petitioner's judgment for personal injuries does not entitle him to rank as a secured creditor of the railroad company, nor has a court of equity power to displace the vested right of the bondholder in favor of such a claim.    See, also, Hammock v. Trust Co., 105 U. S. 91; Burnham v. Bowen, 111 U. S. 777, 4 Sup. Ct. 675.

It is admitted by the stipulation of facts that this $6,859.12 paid to the receiver constituted a part of the net earnings of the road for September and October, 1893.    The payments made by the receiver upon the August pay roll, which the order appointing that officer required him to discharge, amounted to $6,200, and the amount paid for the state taxes for 1892, which, under the laws of Michigan, were a lien paramount to the mortgage and all other claims against the property, is $7,336.42.    The total of these sums—namely, $13,536.42—is nearly double the sum paid to the receiver by the company from these net earnings.    Whatever right, therefore, if any, could be claimed by petitioner in the net earnings is manifestly subject to the equity of the bondholders to reimbursement of the $13,536.42, the payment of which removed the incumbrances mentioned, and for which sum the bondholders are equitably entitled to be subrogated to the priority of the state and the laborers and employés of the road.    The fact that the receiver was not appointed until October 23d does not aid the petitioner.    By the institution of the foreclosure suit in this court on the 4th of September, 1893, this court acquired jurisdiction of the property, and took possession thereof for the purpose of administering the same, and enforcing the remedies of the complainant and other lien creditors, and thereby exempted the property from the process of any other tribunal.    Having then no lien upon this fund, petitioner could acquire none upon it, or on any part of the mortgaged property, after the institution of this suit.    Trust Co. v. Morrison, 125 U. S. 609, 8 Sup. Ct. 1004; Gilman v. Telegraph Co., 91 U. S. 603, 617; Dow v. Railroad Co., 124 U. S. 652, 8 Sup. Ct. 673; Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570.    As ruled by these cases, the commencement of this suit was such a demand as entitled the complainant to receive the earnings and income of the railroad.

With regard to the costs taxed against the railroad company upon the writ of error taken out to the circuit court of the county of Iosco from the supreme court of Michigan, as the writ was issued at the instance of the receiver, in the belief that a reversal of the judgment could be obtained, and further litigation of petitioner's claim in this court thereby obviated, and has occasioned the petitioner some expense in maintaining his judgment in the court below, it seems right that the taxable costs in that cause in the supreme court of Michigan, not including those taxed in the circuit court for the county of Iosco, should be paid by the receiver.

For the reasons stated, all the other relief prayed by the petition of Keating must be denied.    An order will be entered in accordance with this opinion.