EQUITABLE TRUST CO. OF NEW YORK v. GREAT SHOSHONE & TWIN FALLS WATER POWER CO. et al.

(District Court, D. Idaho, S. D. November 17, 1915.)

No. 526.

1. CORPORATIONS ⬤═482—MORTGAGES—FORECLOSURE—AMOUNT OF INDEBTEDNESS.

The trustee under a corporate deed of trust securing bonds is not entitled to foreclose the deed of trust for the full amount of the bonds certified by it, where all of the bonds have not been put into circulation, as a bond does not become an obligation of a debtor until it is issued.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ⬤═482.]

2. CORPORATIONS ⬤═470—BONDS—LIABILITY—"ISSUED."

A corporate bond is "issued," so as to become an obligation of the company, only when a third party acquires some right or interest therein, and, while there need not be an absolute sale, and the bond is issued

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

when put out as collateral, there must be an alienation of some interest therein, or the creation of some lien thereon.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. ☞470.

For other definitions, see Words and Phrases, First and Second Series, Issue.]

**3.** CORPORATIONS ☞482—MORTGAGES—FORECLOSURE—BURDEN OF PROOF.

While a trustee, suing to foreclose a corporate deed of trust securing an issue of bonds, need not show to whom bonds have been issued or by whom they are held, he has the burden of showing how many have been issued and are outstanding.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877-1888; Dec. Dig. ☞482.]

**4.** CORPORATIONS ☞482—MORTGAGES—FORECLOSURE—ISSUE.

While it would seem that, in a suit to foreclose a corporate deed of trust, the question whether bondholders are the absolute owners thereof or hold them as collateral may be raised and litigated prior to the decree of foreclosure and sale, where the corporation was making no defense, and, being insolvent, had no expectation of avoiding a sale or causing a redemption to be made therefrom, this question would be reserved until the distribution of the proceeds of the sale; appropriate qualifications and provisions guarding against injustice and against prejudice to rights which might otherwise be foreclosed being included in the decree.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ☞482.]

**5.** CORPORATIONS ☞482—MORTGAGES—FORECLOSURE—DISTRIBUTION OF PROCEEDS.

On the distribution of the proceeds of a sale upon the foreclosure of a corporate deed of trust, one holding secured bonds as collateral security cannot demand an amount in excess of the actual indebtedness due him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ☞482.]

**6.** CORPORATIONS ☞482—MORTGAGES—RIGHT OF GENERAL CREDITORS TO ATTACK MORTGAGE.

While a general creditor without an interest in or a lien upon mortgaged property of a corporation cannot intervene in a foreclosure suit or challenge the sufficiency of the mortgage, where, in a creditor's suit brought long before the institution of the foreclosure suit, a receiver was appointed of the mortgagor's property and the claims of general creditors were offered, allowed, and filed as valid, subsisting claims, such creditors could intervene and challenge the validity of the mortgage, as the appointment of the receiver placed the property in the custody of the law and prevented them from acquiring specific liens by means of attachment or execution.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. ☞482.]

**7.** CORPORATIONS ☞477—MORTGAGES—CHATTEL MORTGAGES—STATUTORY PROVISIONS—"PERSONAL PROPERTY."

The property of a public service corporation devoted to the public service, such as the franchises and water rights of a power company, its generators, dynamos, switchboards, and other articles of equipment constituting essential parts of its generating, transmitting, and distributing system, as well as tools, implements, materials, teams, and conveyances necessary for the maintenance, repair, and operation of its system, are not to be regarded as "personal property" within chattel mortgage statutes but as constituting part of a single indissoluble unit; and hence a mortgage covering such property and the real estate of the corporation was not ineffective as to such property because of noncompliance with

Rev. Codes Idaho, § 3408, making mortgages of personal property void unless accompanied by an affidavit of good faith.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1857–1863, 1865–1869; Dec. Dig. ☞477.

For other definitions, see Words and Phrases, First and Second Series, Personal Property.]

8. CORPORATIONS ☞477 — MORTGAGES — CHATTEL MORTGAGES — STATUTORY PROVISIONS.

Supplies, materials, and tools in excess of the corporation's present needs, bills or accounts receivable, cash on hand or in bank, stocks of merchandise intended for sale to the public in the ordinary course of retail business, the capital stock of another corporation, a public ferry, and such articles of personalty as did not form constituent parts of the system and were not presently necessary to its maintenance and operation, were not within the operation of this rule, and where Rev. Codes Idaho, § 3408, was not complied with the mortgage was ineffective as to such property as against other creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1857–1863, 1865–1869; Dec. Dig. ☞477.]

In Equity. Suit by the Equitable Trust Company of New York, as trustee under deeds of trust made by the Great Shoshone & Twin Falls Water Power Company, against the Great Shoshone & Twin Falls Water Power Company and others. Decree for complainant in accordance with the opinion.

Murray, Prentice & Howland, of New York City, and Sullivan & Sullivan and Richards & Haga, all of Boise, Idaho, for complainant.

P. B. Carter, of Boise, Idaho, for defendant Great Shoshone & Twin Falls Water Power Co.

James H. Wise, of Twin Falls, Idaho, for defendant Hahn.

S. H. Hays, of Boise, Idaho, for receiver.

Karl Paine, of Boise, Idaho, for defendant Towle.

Martin & Cameron and Alfred A. Fraser, all of Boise, Idaho, for intervening creditors.

DIETRICH, District Judge. [1-5] Two general questions are presented: (1) For what amount is the plaintiff entitled to foreclose? and (2) upon what property? That bonds of the face value of $2,230,000 were duly certified, and later issued for value, and are now outstanding, is admitted. It is further admitted that no part of the principal thereof has been paid, and no interest subsequent to the coupons maturing May 1, 1914. These facts constitute a prima facie showing of an indebtedness of $2,230,000, besides interest thereon at the rate of 5 per cent. from May 1, 1914. Upon the other hand, there is evidence tending to show, and sufficient, I am inclined to think, upon which to base a finding, that nearly all of the bonds were issued, not absolutely, but as collateral only. There being no competent evidence that the collateral character of the holding has changed to absolute ownership, the question presented is whether an unqualified decree should go for the full face value of the bonds. At the oral argument it was urged that it was the right and duty of a trustee to foreclose for the full amount of the bonds which it has certified, regardless of

the question whether or not the debtor has put them into circulation. No authorities have been cited in support of this view, and being unable to appreciate the reasoning upon which it is based I must decline to accept it. A bond does not become an obligation of the debtor until it is issued, and it is issued when, and only when, a third party acquires some right or interest therein. True, there need not be an absolute sale; a bond is issued as well when it is put out as collateral. But to be issued there must be an alienation of some interest therein or the creation of some lien thereon. While the trustee is not bound to show to whom bonds have been issued, or by whom they are presently held, it must assume the burden of showing how many have been issued and are outstanding, for the aggregate of the outstanding bonds is the measure of its maximum recovery.

The real, and as it seems to me the only serious, question upon this branch of the case is whether the capacity in which outstanding bonds are held may be made an issue prior to decree and sale. The trustee says no, and directs my attention to certain cases, which, while tending to support its view, are seemingly far from being conclusive. It is to be noted that it is not a question merely of what presumptions may be indulged, or of the burden of proof, or the weight of evidence. If the trustee's contention is sound, it is incompetent for the debtor to raise such an issue at all, and evidence offered by it to show that bonds were issued only as collateral, and that the amount for which they are held is less than their face, is not receivable. Nor is it a question of the character or amount of the relief to which the collateral holder is entitled. Upon the one hand the trustee concedes that upon the distribution of the proceeds of sale the collateral holder cannot demand an amount in excess of the actual indebtedness due him; and upon the other hand it is doubtless true that up to the amount of such claim, and until it is fully discharged, he is entitled to share ratably with other bondholders upon the basis, not of the amount of his claim, but of the face value of the bonds. But if offered by the debtor can the issue touching the just amount of the collateral claim be ignored? There are logical and practical objections of the most serious character to the trustee's position. It here prays for a judicial determination of the amount of the indebtedness secured by the trust deed and for a sale of the property to pay the same. Admittedly the maximum of the debtor's obligation, where its bonds are held as collateral only, to secure notes which it has executed, is the face of the notes, and not of the bonds. How, then, can the court by its decree declare that the amount due is the full face of the bonds?

It is urged that the matter can be controlled upon the distribution of the proceeds of sale; but, aside from the illogical aspect of such procedure, suppose the debtor desires to avoid a sale, and is able to raise the amount of money it actually owes, but no more, within the period usually granted to it under the practice, before a sale can be made. Is it to be permitted to discharge its just obligation and thus save its property? And, if so, how, in the face of the decree, is the amount of the actual indebtedness to be ascertained? Are the con-

ditions at such a time any more favorable for the determination of the issue than they were before the entry of a decree? The parties before the court are the same. The pertinency of these inquiries is emphasized by portions of complainant's prayer. Referring to the supplemental bill, where the relief sought is more comprehensively and particularly stated, we find that it prays:

"That the court find and adjudge that the principal of the said bonds issued and outstanding as alleged in the bill of complaint herein, in the amount of $2,230,000, is due and payable," etc.

And again:

"That an account be had and taken of the bonds, interest coupons, and interest secured by said deed of trust and supplemental mortgages, and the amount due thereon, with the names of the lawful holders or owners thereof, be ascertained; that an account be taken of all property of every kind conveyed or pledged by said deed of trust and supplemental mortgages or intended so to be, whether acquired before' or after the execution and delivery thereof."

And again:

"That the defendant, Great Shoshone & Twin Falls Water Power Company, and William T. Wallace as receiver of its property, may be decreed to pay, within a short time to be fixed by the court, to the holders of the bonds and coupons secured by said deed of trust and supplemental mortgages, or to your orator as trustee for said holders, the principal amount of said bonds and the defaulted interest thereon," etc.

Again, upon what basis is redemption from sale to be made if the property goes to sale? And is there to be a personal judgment over, for the entire difference between the face of the bonds and the proceeds of the sale, pursuant to the usual provision of a foreclosure decree? If so, manifestly the debtor will thus be adjudged to pay in excess of the amount of its actual debt.

While leaning toward the view that the issue may properly be presented and tried at this juncture of the proceeding, I am under the circumstances disposed to yield to the plaintiff's suggestion that it be reserved, with the understanding that the decree shall contain appropriate qualifications and provisions guarding against injustice and against prejudice to rights which might otherwise be foreclosed. The debtor is making no defense, and, being insolvent, it is quite apparent that it has no expectation of either avoiding the sale or causing a redemption to be made therefrom. Hence no serious practical difficulties need be anticipated.

[6] The second question arises out of the fact that the trust deed, which, under the laws of the state, is to be deemed a mortgage, is executed with the formalities only of a real estate mortgage, and is without certain requirements for, and is not recorded as, a chattel mortgage. By intervening creditors and by the receiver it is urged that as to the personal property which the instrument purports to cover, it is void; or perhaps, speaking more accurately, it is to that extent ineffective as against the claims of other creditors. In support of this view reliance is placed upon section 3408 of the Idaho Revised Codes, which declares that:

"A mortgage of personal property is void as against creditors of the mortgagor * * * unless * * * it is accompanied by the affidavit of the mortgagor that it is made in good faith," etc.

Admittedly no such affidavit was attached to or accompanies the trust deed. Against this defense the first point raised by the plaintiff is that neither the intervening creditors nor the receiver is competent to interpose it. The argument is that the receiver stands in the shoes of the debtor, and can assert no defense unavailable to it, and that the instrument, being undoubtedly valid as between the mortgagee and the mortgagor, is valid as between the mortgagee and the receiver, and further that the intervening creditors having no judgment or other lien upon, or interest in, any of the property, are without standing as parties, and cannot be heard to question the validity of the mortgage. It must be conceded that as a rule a general creditor without interest in or a lien upon mortgaged property cannot intervene in a foreclosure suit or challenge the sufficiency of the mortgage. But here, it is to be observed, a creditors' suit was brought long before the institution of the foreclosure suit, and a receiver was appointed therein to take charge of all of the mortgagor's property. In that suit the claims of these creditors were offered, allowed, and filed as valid subsisting claims against the estate. In Chemical National Bank v. Armstrong, 59 Fed. 372, 375, 8 C. C. A. 155, 28 L. R. A. 231, where a receiver had been appointed to take charge of the assets of an insolvent bank, Judge Taft, delivering the opinion of the court, said:

"It is manifest that it would utterly defeat the object of the Banking Act if, after the suspension, the assets remained subject to levy, execution, or attachment, and therefore that the passing of the assets into the hands of the receiver removes all the property of the bank from liability to process to secure satisfaction of judgments: Bank v. Colby, 21 Wall. 609 [22 L. Ed. 687]. The right which a creditor of the bank had before suspension of levying an execution to satisfy his judgment is gone, and for it is substituted a fixed and definite interest in the assets as a security for the payment of his debt, which it is the purpose of the Banking Act to reduce to money, and apply on his debt, with all convenient speed."

Referring to this case, the Supreme Court of the United States, speaking through Mr. Chief Justice Fuller, in Merrill v. Bank, 173 U. S. 131, 136, 19 Sup. Ct. 360, 362 (43 L. Ed. 640), said:

"This was in accordance with the decision of the Circuit Court of Appeals for the Sixth Circuit, in Chemical National Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231; Mr. Justice Brown and Circuit Judges Taft and Lurton, composing the court. The opinion was delivered by Judge Taft, and discusses the question on principle with a full citation of the authorities. We concur with that court in the proposition that assets of an insolvent debtor are held under insolvency proceedings in trust for the benefit of all his creditors, and that a creditor, on proof of his claim, acquires a vested interest in the trust fund."

Recognizing the same principle, the Supreme Court of California, in Ruggles v. Cannedy, 127 Cal. 290, 53 Pac. 911, 59 Pac. 827, 46 L. R. A. 371, gave it specific application to conditions analogous to those here presented. It is there said:

"In this case the creditors had not obtained judgments against the mortgagor, nor indeed had they instituted any proceedings against him at the time

he was adjudged an insolvent. After that judgment, by force of the insolvency act itself, they were prevented from resorting to any proceeding in law or equity for such purpose. They were limited to the presentation of claims in the insolvency court. This they did, and when those claims were allowed and approved the questions involved in them became res adjudicata. The presentation, allowance, and approval of the claim, while not in strictness a judgment, had much of the force and effect of a judgment, and was the only thing in the nature of a judgment which creditors so situated could obtain. For the purpose of enforcing their rights against fraudulent or void acts of the insolvent, it is the equivalent of a judgment. Roan v. Winn, 93 Mo. 503 [4 S. W. 736]."

Only by giving effect to such principle can great injustice be avoided, for otherwise, at the suggestion and with the encouragement of the trustee, a general creditor could bring such a suit as was here brought, and secure the appointment of a receiver, and the property having thus been placed in custodia legis, other general creditors would be prevented from acquiring specific liens thereon through the levy of attachment or execution process, with the result that they would be disabled from attacking an invalid mortgage, while the trustee, taking advantage of their disability, could rest secure until, upon the maturity of its right to foreclose, it could appropriate the entire property to the discharge of its claim, notwithstanding the defect in its mortgage. It will therefore be held that the creditors were properly permitted to intervene, and that they have an interest which entitles them to challenge the mortgage.

[7, 8] The further contention is made by the trustee that the provisions of the chattel mortgage statutes of the state are not applicable to property such as is here involved, for the reason that while some of it, considered separately, falls within the definition of personal property, it is all to be deemed a single indissoluble unit, because of its necessary relation to the public purpose to which it is devoted. Within certain limits the view finds support in Hammock v. Farmers' Loan & Trust Co., 105 U. S. 77, 26 L. Ed. 1111, and Farmers' Loan & Trust Co. v. Detroit, etc., R. R. Co. (C. C.) 71 Fed. 29. See, also, Jones on Corporate Bonds and Mortgages (3d Ed.) § 137 et seq. While this is not a railroad property, it is devoted to the public service, and I am inclined to think is subject to the same considerations which were regarded as controlling in these cases; in the absence of a decision of the Supreme Court of the state to the contrary, I shall therefore apply the principle which they establish to the determination of the issue here. It may be added that the decisions of the state courts, where there are no controlling statutes, are wanting in harmony, with the weight probably against the view here adopted.

Complying with the suggestion made at the hearing, counsel for the interveners have incorporated in their brief a schedule in which specifically or generally they have inventoried what they deem to be personal property. By section 3054 of the Idaho Revised Codes real property or real estate is defined as embracing lands, mining claims, possessory rights to lands, ditch and water rights, and everything affixed or appurtenant to lands. Under this definition it is not apparent how the several water rights included in the list can be held to be personal property. But, however that may be, they clearly fall

within the principle of the Hammock Case. So also do franchises, and such items as generators, dynamos, switchboards, and other articles of equipment constituting essential parts of the mortgagor's generating, transmitting, and distributing system; also tools, implements, and materials, teams and conveyances, presently necessary for the maintenance, repair, and operation of the system.

The principle, however, does not extend to supplies, materials, and tools in excess of present needs; to bills or accounts receivable; to cash on hand or bank balances; to stocks of merchandise which are intended for sale to the public in the ordinary course of retail business; and apparently not to the capital stock of the Jerome Waterworks Company, or to the public ferry at Shoshone Falls; nor, generally speaking, to such articles of personalty as do not form constituent parts of the system, or are not presently necessary to its maintenance and operation—as to all of which the claims of the interveners will be recognized as being superior to the lien of the mortgage. The other property will be sold as a single parcel, but these items upon which it is held the creditors have a superior lien will be sold separately. Either party may, upon notice, introduce further evidence, at a date to be stated in the notice, prior to December 10, 1915, for the purpose of more completely identifying the property embraced in this latter class.