The First National Bank of Ottawa, Appellee, and Smith Trust and Savings Bank, Appellant, v. Kay Bee Company et al., Defendants.

Gen. No. 9,095.

Opinion filed September 24, 1936.

McCalmont, Ramsay & Bull, of Morrison, for appellant.

Hibbs & Pool, of Ottawa, for appellee.

Mr. Justice Dove delivered the opinion of the court.

On October 29, 1932, Kay Bee Company, a corporation, executed its trust deed by the provisions of which it conveyed to the First National Bank of Ottawa, as trustee, certain described premises in Whiteside coun-

ty. This trust deed was given to secure the payment of two bonds, numbered one and two respectively, each payable to bearer, each for the sum of $25,000, each due July 1, 1938 and each bearing six per cent interest, interest payable semiannually and evidenced by coupons attached to said bonds. Bond No. 1 was made payable at the First National Bank of Ottawa and bond No. 2 was made payable at the Smith Trust and Savings Bank at Morrison, Illinois. At the time of the execution of the trust deed and bonds, the Kay Bee Company was indebted to the First National Bank of Ottawa and also to the Smith Trust and Savings Bank, and in order to secure such indebtedness and to secure any further or additional loans which said banks might make to said Kay Bee Company, the said Kay Bee Company delivered to the Ottawa Bank Bond No. 1 and to the Morrison Bank, bond No. 2, said bonds to be held by said respective banks as collateral security for any indebtedness of the Kay Bee Company which said banks might hold. At the time this foreclosure proceeding was instituted the Ottawa bank held said bond No. 1 as collateral security for the payment of $24,000 and interest evidenced by eight principal notes, each for the sum of $3,000. The Morrison bank held, at that time, bond No. 2 as collateral security for $16,500 and interest evidenced by six principal notes. Default having been made in the provisions of the trust deed, the banks instituted this foreclosure proceeding. On March 20, 1936, a decree of foreclosure and sale was rendered which found that the amount due the Ottawa bank was $24,956.50 and that the amount due the Morrison bank was $17,117.25. The decree then directed the mortgagor to pay these sums, together with costs, within 90 days and provided that in default of so doing then the mortgaged premises should be sold by the master in chancery. The decree then provided that if the sum realized from the sale, after the payment of costs and solicitor's fees, be insufficient to

pay the respective amounts due the plaintiffs, then the master should divide the remainder, after the payment of costs, between the plaintiffs in the proportion that the amount due each bears to the aggregate amount due both plaintiffs. By agreement of the parties, the question of the correctness of this portion of the decree has been certified to this court, it being the contention of the Morrison bank that in the event of a deficiency, the proceeds of the sale should be distributed equally until the indebtedness due the Morrison bank should be paid in full. In other words, the Morrison bank insists that the distribution should be made on the basis of the proportion which the bond of each plaintiff bore to the total amount of the bonds. The Ottawa bank insists, and the chancellor held, that the proceeds of the sale should be distributed in the proportion that the amount due the respective banks bears to the total amount due both banks.

Counsel for the Morrison bank cite a number of cases from other jurisdictions, among them *Georgetown Water Co. v. Fidelity Trust and Safety Vault Co.,* 117 Ky. 325, 78 S. W. 113. In that case it appeared that on April 15, 1890, the Water Company executed a mortgage to the Fidelity Trust and Safety Vault Co., as trustee, to secure 70 bonds of $500 each, due in 20 years. On November 6, 1891, the Water Company borrowed from the Fidelity Trust & Safety Vault Co. $10,000, executing its note due in six months with the owners of the stock of the company as sureties and also securing the note by pledging 54 of the mortgage bonds. The Water Company bought certain machinery from the Central Thomson-Houston Company and delivered to it 10 of the mortgage bonds, which were accepted by this company at their par value in full payment of the machinery. Thereafter in 1898 the Fidelity Trust & Safety Vault Co., as trustee, instituted foreclosure proceedings. It further appeared

that after the original note of $10,000 to the Fidelity Trust & Safety Vault Co. matured, one of the sureties (Mitchell) paid it and the 54 bonds were turned over by the bank to him and he transferred them to other parties. The court held that in legal effect the bonds were promissory notes and each assignee took them subject to prior equities; that the 10 bonds delivered to the Thomson-Houston Co., and the 54 bonds delivered to the Trust Company as collateral to the note of $10,000 were the only bonds which constituted a lien on the property; that after the payment of certain prior claims about which there was no controversy, it was ordered that 10/64ths of the fund remaining should be applied to pay the 10 bonds sold to the Central Thomson-Houston Co., and that 54/64ths should be used to pay the 54 bonds pledged to the Trust Company to secure its note. In the course of its opinion the court said: ''The trust company had the right to look to the entire proceeds of these bonds for the payment of its debt, and when Mitchell paid the debt as surety, he succeeded to all the rights of the trust company and had the right to look to the entire proceeds of the 54 bonds for the repayment of his money and interest. The remainder of the proceeds of these 54 bonds, after the payment of Mitchell's debt, with interest, is, as between it and Mitchell, the property of the water company, for Mitchell has no claim on them except the lien for the repayment of his money with interest. If the 10 bonds held by the Central Thomson-Houston Company are not paid in full by 10/64ths of the net proceeds of the sale above directed to be paid upon them, the remainder of the principal and interest of these bonds should be paid in full out of the funds set apart to the water company after the payment of Mitchell's debt out of the proceeds of the 54 bonds as above indicated. For the water company is the obligor in the bonds held by the Central Thomson-Houston

Company, and must discharge its obligation out of the funds coming to it before it can be allowed to withdraw any part of the proceeds of the sale. The substance of the situation, as between the Central Thomson-Houston Company and the water company, is that the former company holds the promise of the latter to pay it $5,000, secured by a lien on the property in contest, and, as between the two, the water company's right to the proceeds of the sale is subordinate to the lien of the Central Thomson-Houston Company. When all the bonds are thus paid off, so far as they are a valid lien on the property, the remainder of the fund, if nothing else appeared, would be the property of the water company.'' What this decision held was that the holder and owner of 10 bonds of the par value of $5,000 and who had accepted them at par and a creditor who held 54 bonds of the par value of $27,000 as security for a $10,000 indebtedness were entitled, as between each other, to share in the proceeds upon foreclosure of the mortgage, in the proportion that the principal sum of the several bonds held by each creditor bore to the aggregate principal of all the outstanding bonds which constituted a lien upon the property covered by the trust deed executed to secure their payment. The facts in that case are distinguishable from the facts in the instant case. In that case the Thomson-Houston Company was a purchaser of 10 of the bonds of the Water Company for value, while here both creditors held the bonds as collateral security only and they were issued by the mortgagor Kay Bee Company only for the purpose of securing the payment of the respective amounts which the mortgagor then owed the Morrison and Ottawa banks, together with such sums as each bank might advance to the mortgagor in the future.

In *Worth v. Marshall Field & Co.*, 240 Fed. 395, also cited by counsel for the Morrison bank, it appeared

that in 1902 the Worth Mfg. Co. mortgaged its property to secure the payment of bonds aggregating $100,000, to which six per cent semiannual interest coupons were attached. It sold $26,000 of these bonds and pledged others to secure various sums borrowed by it. To one of its creditors it pledged, shortly after the execution of the mortgage, $15,000 of its bonds. To this creditor it owed exactly $15,000 and up until June 1, 1910, it paid the interest regularly upon its principal indebtedness. The controversy involved the interest coupons on these pledged bonds and it was held that so long as the debtor paid the interest on the $15,000 it owed, no interest on the bonds could accrue for the reason that the bonds represented no other principal debt than that upon which interest had been paid and that after the debtor had become a bankrupt, the holder of the bonds could not recover from the bankrupt estate the amount of the interest coupons attached to the bonds, since there was no consideration received by the corporation, except the debt on which the agreed interest had been paid.

Counsel for the Morrison bank also call our attention to a number of other authorities from other jurisdictions, but we have examined practically all of those cited in their brief, but none of them is decisive of the question here presented. For instance in *Newport & Cincinnati Bridge Co. v. Douglass,* 12 Bush (Ky.) 673, the court said that the sale by Masonic Savings Bank and the Western Bank of bonds to themselves which they held as collateral security vested title in them and they were entitled to enforce their rights as owners for value, and it was held that bonds which were held as collateral security should only be paid to the extent necessary to satisfy the debts for which they were held and no further. And in *Equitable Trust Co. v. Great Shoshone & Twin Falls Water Power Co.,* 228 Fed. 516, it was held, what is conceded to be the

law in this State, that on the distribution of the proceeds of a sale upon the foreclosure of a corporate deed of trust, one holding secured bonds as collateral security cannot demand an amount in excess of the actual indebtedness due. Such is the law in this State. *Peacock v. Phillips,* 247 Ill. 467. In that case it appeared that Lillie M. Phillips was the owner of the premises known as 151 Astor street in Chicago and being indebted to the Chicago Savings Bank and Trust Co. in the sum of $2,500, executed a note for that amount and she, with her husband, also executed a note for $4,000 payable to their own order and indorsed the same in blank. They also executed a second mortgage upon said premises to secure the payment of this $4,000 note and delivered this note and mortgage to the bank as collateral security for the payment of their $2,500 note. On April 29, 1907, this note having matured and not being paid, the bank sold the collateral security to J. Arnold Scudder (who knew all the circumstances of the pledge) for $2,530.62, being the amount due the bank. Thereupon the bank canceled the $2,500 note and delivered it to Mrs. Phillips. In a proceeding by the owner of the first trust deed to foreclose the same, he, Scudder, filed his cross-bill, insisting that he was entitled to receive the full amount of his $4,000 note and interest thereon. In refusing to sustain this contention, the court held that the bank might have foreclosed the mortgage pledged to it, but the equities between the parties would have forbidden a decree for any more than the amount due on its $2,500 note, that while the contract between Mrs. Phillips and the bank conferred upon the bank the power of sale and enabled the bank to do an act to obtain payment which could not otherwise have been done, that such a grant of power to sell did not enable the bank to confer a greater right upon the purchaser with full notice of the facts and circumstances and the ex-

tent to which the bank could enforce the obligation, than the bank would have had in case of foreclosure.

It is argued, however, that when the Morrison bank received the bond of the Kay Bee Company in the principal sum of $25,000 and which it, the bank, accepted as collateral security, it did so knowing that this note was secured by a mortgage to secure the payment of $50,000 and that as its bond represented one-half of that amount, its lien attached to one-half of the property mortgaged and that upon a sale of that property it should be entitled to receive one-half of the proceeds in the event that one-half of such proceeds should be required to discharge the amount found to be due it upon its principal notes. The answer to this argument is that the lien of the Morrison bank did not, at any time, attach to one-half of the mortgaged property. The relationship between both the banks and the Kay Bee Company was, from the time the bonds were pledged, that of mortgagor and mortgagee. Each bank recognized this and foreclosed its lien as it had a right to do. Neither bank sold its collateral and the trust relationship which each bank bore to the property pledged as collateral never came to an end. What each bank held at the time this foreclosure suit was instituted was a lien upon the property mortgaged and that lien was measured by the amount due each bank respectively upon its principal notes. The facts, therefore, in the instant case are distinguishable from the facts in those cases which define the duties and obligations of the holders of collateral security after the collateral has been sold to satisfy the pledgors' debt as by such sale the collateral loses its character as collateral.

In Quindry on Bonds and Bondholders, Vol. I, section 333, at page 434, the author says: "Where bonds are hypothecated as security for a claim of a much smaller amount than the face of the bonds, a purchaser, who buys the claim at its face and takes with it the

hypothecated bonds and represents his interest to be the amount of the claim, permitting others to proceed with that understanding, is estopped from claiming a greater amount in the proceeds of the foreclosure sale. The time to raise the question as to whether bond-holders are the absolute owners or hold the bonds as collateral is during the litigation prior to the decree of foreclosure, although it may be reserved until distribution where the corporation is insolvent and makes no defense. One holding secured bonds issued and delivered by the maker as collateral, cannot demand an amount in excess of the actual indebtedness due him, out of the proceeds of a foreclosure sale. But, the rule is otherwise where bonds held as security are hypothecated, by purchasers, rather than by the maker of the bonds. In such cases, the holders of the bonds as collateral will share in the proceeds of the sale in proportion to the amount of the bonds held by them, and not in proportion to their claims.''

The rule laid down by this author is that where bonds are hypothecated by the maker, then the holders of such hypothecated bonds will share in the proceeds of a sale in proportion to the amount due them by virtue of their several respective claims. This is equitable and just and inasmuch as the decree in the instant case so provided, it should be affirmed.

*Decree affirmed.*